## Case No. 734.

### BAILEY v. CRIM et al.

[9 Biss. 95;[1] 8 Reporter. 455; 11 Chi. Leg. News, 383; 4 Cin. Law Bul. 574.]

Circuit Court, D. Indiana. Aug., 1879.

DEEDS IN ESCROW—INNOCENT MORTGAGEE.

Where persons exchanging lands place their deeds in escrow and transfer their possession, and the depositary records one of the deeds without the knowledge of the grantor, and the grantee procures a loan on the land, a mortgagee in good faith acquires a valid lien upon the land, though the mortgagor misappropriates the money. [Berry v. Anderson, 22 Ind. 40, and Everts v. Agnes, 6 Wis. 453, distinguished.]

[In equity. Bill by Henry Bailey against James Moorman and the assignee in bankruptcy of Noah Crim. James Moorman, in a cross bill, prayed for protection as an innocent mortgagee. Heard on exceptions to master's report. Overruled, and decree for cross complainant.]

Wm. Grose and Marls E. Forlsner, for complainant.

Herod & Winter, for defendant.

GRESHAM, District Judge. On the 18th day of September, 1877, Henry Bailey, of Randolph county, and Noah Crim, of Henry county, entered into a written agreement for the exchange of the farms upon which they were then living, each surrendering to the other full possession. Crim's farm was incumbered, and by the terms of the agreement he was to pay all the liens, except $2,000, on or before the 25th of December. Deeds were duly signed and acknowledged and placed in the hands of James Brown, a loan agent residing at New Castle, Henry county,

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

there to remain until the terms of the contract were complied with. At the time Brown became custodian of the deeds, it was understood and expected by the parties that Crim, through Brown, would raise money on the land conveyed to him, to remove the incumbrances, less $2,000, upon the land which he conveyed to Bailey. This seems to have been the reason for depositing the deeds with Brown. On the 22d of November, 1877, Brown, without the knowledge of either party, had Bailey's deed to Crim recorded in Randolph county, and made one or more unsuccessful efforts to negotiate a loan for Crim. Just what Bailey was to do before being entitled to his deed from Crim, the agreement and evidence fail to show, but on the 29th day of January, 1878, he demanded and received from Brown, Crim's deed for the Henry county land. On the 22d of April, 1878, James Moorman, of Randolph county, loaned Crim $2,100, and took a mortgage on the land described in Bailey's deed to Crim, to secure the loan. This Moorman did in good faith, and without any knowledge of the circumstances under which the deeds had been placed in the hands of Brown, or of Bailey's rights. Instead of applying the money obtained from Moorman to remove the incumbrances on the lands conveyed to Bailey, Crim used it for other purposes, and a few days thereafter went into bankruptcy. Bailey paid off the incumbrances and filed his bill against Moorman and Crim's assignee to enforce his vendor's lien, for the amount so paid, against the land conveyed to Crim, demanding priority over the mortgage held by Moorman.

Moorman set up his mortgage in a cross-bill, demanding protection as an innocent purchaser. The master reported in favor of Moorman, and the case is now submitted on exceptions to the report. Moorman had reason to believe, and did believe, that Crim was the absolute owner in fee of the lands upon which he took the mortgage. He found Crim in full and undisputed possession under a deed from Bailey, which was duly recorded. It is not pretended that he knew any fact or circumstance which was sufficient to put him on inquiry as to Bailey's rights. While laches cannot be imputed to Bailey for depositing his deed to Crim with Brown as an escrow, yet so doing Bailey put it in Brown's power to mislead Moorman. On account of Brown's conduct either Bailey or Moorman must suffer loss, and I think the latter has the better equity.

The agent of Bailey, in disregard of instructions, had his deed recorded before Crim had complied with his agreement to remove the liens on the lands conveyed to Bailey. This was Bailey's misfortune. He put it in the power of Brown to inflict the injury, and it would be against natural justice to require Moorman to sustain the loss.

At the time of the exchange, Bailey understood that Brown was to assist Crim in

raising money by mortgaging the land described in Bailey's deed. It was in this way that Crim was expected to be able to comply with his agreement to remove the liens, and it may be that Bailey was less surprised at finding his deed to Crim and the latter's mortgage to Moorman recorded than he was by Crim's refusal to use the money in discharging the liens.

It is urged by counsel for plaintiff that the paper placed in Brown's hands by Bailey was no more than an escrow; that the recording of it did not make it a deed; that its delivery without compliance with the conditions upon which it was held passed no title to Crim, and that therefore Crim conveyed no title to Moorman.

Berry v. Anderson, 22 Ind. 40, and Everts v. Agnes, 6 Wis. 453, are cited in support of this position. In Everts v. Agnes it was held that the fraudulent procurement of a deed deposited as an escrow, from the depositary, by the grantee, did not operate to pass the title, and that a subsequent purchaser from such grantee, without notice and for a valuable consideration, derived no title thereby, and could not be protected. In Berry v. Anderson the deed was procured from the custodian, who held it as an escrow, by fraud, and the grantor still remained in possession, which latter fact, of itself, was sufficient to put the purchaser on inquiry. It has been held that a deed delivered to an agent as an escrow, and by him delivered to the grantee contrary to the conditions, passes a title voidable only. Blight v. Schenck, 10 Pa. St. 285; Pratt v. Holman, 16 Vt. 530. Without deciding that Bailey's recorded deed to Crim was voidable only, I hold, for the reasons already given, that Moorman cannot be postponed in favor of Bailey. Blight v. Schenck, supra; Haven v. Kramer, 41 Iowa, 382.

Exceptions overruled and decree in accordance with the master's finding.