WILLIAM L. WATTS, appellant, v. V. L. ARCHER, a/k/a LUCILLE ARCHER, appellee.

No. 50181.

(Reported in 107 N.W.2d 549)

FEBRUARY 8, 1961.

Kindig, Beebe & McCluhan, of Sioux City, for appellant.

McQueen & Forker, of Sioux City, for appellee V. L. Archer.

GARFIELD, C. J.—This is an action in equity by plaintiff, William L. Watts, against defendant, Mrs. V. L. Archer, for partition of a residence property in Sioux City. Each is the record owner of an undivided half interest therein. Following trial to the court relief was denied and plaintiff appeals.

594

The pleadings are short. The petition alleges plaintiff and defendant each own an undivided half interest subject to a mortgage, the owners are unable to agree on a division of the property, it should be sold and the proceeds divided. The answer denies plaintiff owns a half interest in the property and alleges defendant has complete interest therein except for the mortgage. The answer also states plaintiff and one Anderson are friends and conspired to defraud defendant out of her home, plaintiff is not an innocent purchaser for value and did not act in good faith, plaintiff has gained no interest in the property by any purported assignment from Anderson. Plaintiff's reply denies these statements in the answer.

On June 10, 1957, defendant owned the property subject to a mortgage. (There is no dispute about the mortgage.) On said date defendant executed a deed, subject to the mortgage, to herself "and M. J. Anderson, a single man, as joint tenants with right of survivorship and not as tenants in common." The deed was filed for record in Woodbury County in which Sioux City lies, evidently by Anderson, and recorded January 15, 1958. On June 2, 1958, Anderson and his wife made a warranty deed to plaintiff of an undivided half interest in the property for a stated consideration of $625 "and other valuable considerations." On June 3 plaintiff gave Anderson his check for the $625.

Plaintiff testified he had seen the house on the outside several times, but never on the inside, before his purchase; he and Anderson checked the records in the courthouse to make sure there were no other liens against the property; he did not have an abstractor check the property; he had no opinion as to the nature of the title; he did not talk to defendant, who was living in the house, about it but did talk to a tenant who evidently lived in part of it; Jack Anderson is a truck operator who has been doing business five years under that name; he has known Anderson about three years; he (witness) is in the same business; he did not know "where Anderson is today."

Defendant testified Anderson's true name is Marvin John Williams; he is married and she has known his wife since April 1955; she (defendant) formerly worked for Anderson; just

before she made the deed to him he came to her house about 2 a.m. and said if she wanted to live and see her children again she should deed this to him; he also made other serious threats against her; knowing Anderson, she knew he would carry out his threats; she was afraid of him and had suffered permanent injuries from him; he last hurt her in late August 1957; he last threatened her in January 1958, just before he recorded the deed; she had the deed to herself and Anderson prepared and signed it at the savings and loan office which held the mortgage on the place; Anderson was not there at the time; he had told her how the deed should be made out if she wanted to live; she put the deed in the glove compartment of her car and never gave it to anyone; Anderson came to the house that same day and wanted the deed; she refused to give it to him; he went to the garage and got into the car to which he had a key; Mrs. Anderson called her, evidently the same day, and said he had the deed to the house; she told Mrs. Anderson she did not give him the deed—he got it.

Defendant also testified that before Mrs. Anderson told her Jack had sold to plaintiff she had a conversation with plaintiff in the basement of the home in which she told him the house was not for sale, it was her home; Anderson was present at the conversation; just before June 1957, when defendant bought the house, she had dinner with plaintiff at Magnolia, Minnesota; Anderson was present in the dining room; in December 1957 she made some improvements on the home and financed them by a home improvement loan on which she had been making payments; she has two lawsuits pending against Anderson for assault and battery and personal injury; she does not know where Anderson is.

The above is a fairly complete statement of the evidence. Aside from the deputy county recorder, who identified the record of the deed defendant made, plaintiff and defendant were the only witnesses. The trial court held defendant owned the property subject to the mortgage and, as stated, denied relief to plaintiff. The court found plaintiff knew defendant was in possession of at least part of the premises and made certain claims in regard thereto; defendant never delivered the deed

executed by her and it was taken from her without her knowledge and consent; plaintiff has failed to show he was a bona fide purchaser for value without notice of any defects in the title claimed by Anderson.

As a conclusion of law the trial court held a purchaser of realty is bound to take notice of claims of parties in possession and if he does not do so he is not a bona fide purchaser for value as to such claims and takes title subject thereto. Plaintiff assails this conclusion and defendant seeks to uphold it. Plaintiff recognizes, however, that the defense is apparently predicated on the fact defendant did not deliver the deed to Anderson. And defendant argues the decree should be upheld upon this ground.

■ Although our review is de novo we are justified in giving weight to the trial court's findings, especially so far as they relate to credibility of witnesses, in view of his better position to determine the real truth. Rasmussen v. Rasmussen, 252 Iowa 414, 419, 107 N.W.2d 114, 117, and citations; Knigge v. Dencker, 246 Iowa 1387, 1395, 72 N.W.2d 494, 498, and citations.

■ Of course delivery is essential to the validity of a deed. Title does not pass through an undelivered conveyance. Brandt v. Schucha, 250 Iowa 679, 687, 96 N.W.2d 179, 184, and citations. "An undelivered deed is no deed, and no title, either defeasible or indefeasible, passes under [it] * * *." Gibson v. Gibson, 205 Iowa 1285, 1290, 217 N.W. 852, 855.

■ Where, as here, a deed is signed, acknowledged and recorded there is a rebuttable presumption it was delivered and the burden is on the one claiming nondelivery to prove the fact by clear and satisfactory evidence. Some of our decisions say the evidence must be clear, satisfactory and convincing. Wagner v. Wagner, 249 Iowa 1310, 1316, 90 N.W.2d 758, 762, and citations; Jeppesen v. Jeppesen, 249 Iowa 702, 708, 709, 88 N.W.2d 633, 637, and citations; Gibson v. Gibson, supra, 205 Iowa 1285, 1290, 1291, 217 N.W. 852, and citations; 26A C. J. S., Deeds, sections 187, 204g.

■■ When the trial court's findings are given weight, we think defendant has shown nondelivery of the deed made by her to (herself and) Anderson by the requisite proof. Her testi-

mony as to nondelivery is uncontradicted. It is not unreasonable or improbable. The only other person with knowledge of the matter is Anderson. He could not be expected to admit, at a time when defendant had two lawsuits pending against him, he surreptitiously extracted the deed from the glove compartment of her car. He would be much more apt to deny doing so. Yet Anderson was not produced as a witness. The only explanation of this is plaintiff's statement he did not know where Anderson was the day of the trial. The explanation is hardly sufficient. This circumstance seems to militate against plaintiff on the question of delivery of the deed. See in this connection In re Estate of Burrell, 251 Iowa 185, 195, 196, 100 N.W.2d 177, 184, and citations; Knigge v. Dencker, supra, 246 Iowa 1387, 1397, 72 N.W.2d 494, 499, and citations.

It is clear Anderson acquired no interest in the property by virtue of the undelivered deed. This leaves for decision the question whether plaintiff is in better position than his grantor Anderson. We hold under this record he is not.

■ 16 Am. Jur., Deeds, section 112, states: "Unless the grantor has ratified the deed by his acts since the grantee obtained the custody of it or is estopped from asserting that the deed was never delivered, an undelivered deed is inoperative even in favor of an innocent purchaser or of one who had no notice that a deed in his chain of title had never been delivered. Thus, a subsequent purchaser for value without notice can acquire no right or title under a stolen deed."

Golden v. Hardesty, 93 Iowa 622, 626, 627, 61 N.W. 913, 915, seems to be squarely in point, at least in principle. Defendants there executed a deed in blank and left it with a third person who fraudulently inserted the name of a grantee (Hodgman) to whom the deed was delivered without authority. The grantee in turn mortgaged the property and plaintiff acquired the mortgage. We treated him as an innocent purchaser for value in his action to foreclose the mortgage. We held there was no delivery of the deed and plaintiff could not recover without pleading that defendants were negligent or estopped to assert nondelivery of the deed.

This from the opinion is applicable here:

■ ▪ "The delivery must be voluntary in pursuance of the intent of the grantor. If the deed be stolen, or, having been deposited as an escrow, is delivered without authority, it is without effect, and is void, unless the wrongful delivery was due to negligence on the part of the grantor [citations]. * * *

"* * * If effect is now given to the deed in question, it cannot be because it was valid as between the parties to it, but for the reason that the grantors, by their own conduct, are estopped to assert as against the plaintiff that it is not valid. The appellant has cited numerous authorities which hold, in effect, that the grantor in a deed obtained from him by fraud will be estopped to deny the validity of the deed as against an innocent purchaser for value, if such grantor, by his negligence, enabled the fraudulent grantee to sell to the innocent purchaser, and it is unquestionably true that such an estoppel may exist. But it is the well-settled rule in this state that matters in estoppel, to be available as such, must be specially pleaded [citations]. No issue as to an estoppel is presented by the pleadings in this case. The counterclaim alleges as a defense to the mortgage that Hodgman was never the owner of the lot, and never had any right, title, or interest in it. The reply alleges that the plaintiff purchased the note and mortgage in good faith, for a valuable consideration, without knowledge of any fact or facts which rendered the mortgage void; but it does not set out any facts upon which to base an estoppel as against Hardesty and his wife, nor allege that they have been negligent in any respect. We are therefore compelled to hold that the claims of an estoppel, made in argument, cannot be maintained. * *. * That Hardesty and wife instituted no legal proceedings to restrain the delivery of the deed, or to set it aside, and thus prevent the purchase of the mortgage in suit by the plaintiff, is a fact which would have been relevant to a question of negligence on their part had it been presented by the pleadings, but does not show a delivery of the deed."

The pleadings in the present case as to the point under consideration are substantially like those in the cited precedent. There is no plea of estoppel, or of facts giving rise to one, against defendant. It is to be noticed too that the above

quotation places a deed delivered without authority by an escrow on the same footing as a stolen deed.

Golden v. Hardesty, supra, is followed in Jackson v. Lynn and Rich, 94 Iowa 151, 154–156, 62 N.W. 704, 705, 58 Am. St. Rep. 386, also directly in point on principle. There Jackson executed a deed to Lynn and deposited it with Ledwich from whom Lynn surreptitiously obtained it. Lynn then conveyed to Rich who pleaded in defense he was an innocent purchaser for value without notice of any right claimed by plaintiff. We held Jackson was entitled to have his title quieted. The opinion states:

"I. It clearly appears * * * the deed from plaintiff to Lynn is of no validity, because it was never delivered, but, on the contrary, was fraudulently abstracted from the possession of the depositary, Ledwich, and is therefore void, not only as to Lynn, but also as to Rich, unless there is something in the defense interposed, which will save the title to him [citations].

"* * * if the deed was fraudulently and wrongfully obtained from Ledwich, as charged, it will no more pass title to the supposed grantee, Lynn, than if it were a forgery, and will not transfer title to subsequent purchasers without notice [citations]. The grantor in such a case may have been so negligent, or his carelessness and inattention to the rights of others may have been so marked, that the law will estop him from claiming title as against a bona fide purchaser for value. But where such negligence or carelessness or inattention, either before or after delivery of deed, is relied upon as an estoppel, it must be pleaded as such before the subsequent grantee can rely thereon. Golden v. Hardesty, supra. In this case no estoppel was pleaded, so we have no occasion to consider whether defendant Rich was a bona fide purchaser or not."

Golden v. Hardesty and Jackson v. Lynn and Rich, supra, have been cited with approval in several more recent opinions. The Jackson case is thus referred to in Tutt v. Smith, 201 Iowa 107, 110, 204 N.W. 294, 48 A. L. R. 394, 397, on which plaintiff strongly relies: "The doctrine is generally stated that, where an instrument held as an escrow is delivered by the depositary to the grantee without performance of the conditions upon which it was to be delivered, no title passes, and a subsequent pur-

chaser from the grantee without notice and for a valuable consideration acquires no title, and will not be protected. Haven v. Kramer, 41 Iowa 382; 21 Corpus Juris 885. The rule has been strictly applied where the deed was surreptitiously and fraudulently obtained by the grantee from the depositary without his consent; and it has been said that a deed so obtained will no more pass title to the grantee than if it were a forgery, and will not transfer title to a subsequent purchaser without notice. Jackson v. Lynn, 94 Iowa 151."

No question of pleading seems to have been raised or considered in Tutt v. Smith, supra. Further, the decision draws a distinction between such cases as Golden v. Hardesty and Jackson v. Lynn and Rich, on the one hand, where a deed is delivered by unauthorized act of *the depositary* and a case where delivery occurs through the fraudulent act of *the grantor's agent* only. There is no claim Anderson was defendant's agent here or that she is chargeable with his conduct.

An annotation in 48 A. L. R. 405, 430, 431, cites Jackson v. Lynn and Rich, supra, 94 Iowa 151, 62 N.W. 704, 58 Am. St. Rep. 386, Golden v. Hardesty, supra, 93 Iowa 622, 61 N.W. 913, and several decisions from other jurisdictions for the statement, "Where an escrow is tortiously taken from the possession of the escrow holder, no title or interest passes, and delivery may be denied even as against an innocent purchaser." To like effect is a note in Ann. Cas. 1917E 435, 446, and citations.

Numerous holdings that an estoppel must be pleaded to be available and that the rule is well settled include Abel v. Abel, 245 Iowa 907, 921, 65 N.W.2d 68, 75, and citations; Wilson v. Lindhart, 216 Iowa 825, 828, 829, 249 N.W. 218, and citations. See also annotation, 120 A. L. R. 8.

There are some suspicious circumstances surrounding plaintiff's purchase from Anderson. However, we have chosen to ignore them and to assume plaintiff acquired the deed to him from Anderson and paid the consideration therefor without notice, actual or constructive, of defendant's claim to the property.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.