WAY v. COUNCIL *et al.*

**Vendor and Vendee :** FRAUD : GOOD-FAITH PURCHASERS : ESTOPPEL : EVIDENCE. Plaintiff agreed to exchange his store building for a patent right, and, as a part of the same transaction, C., the owner of the patent, agreed to buy the goods in the building at cost price. While the goods were being invoiced C., after solicitation, induced plaintiff to make the deed for the building, and she made the deed for the patent right. Plaintiff claims that his deed was never delivered, but the evidence does not sustain that claim. C. conveyed the building to D., and D. mortgaged it to T. Afterwards C., upon a pretense that her money was at another town, went thither for the alleged purpose of getting it to pay for the stock of goods, but she did not return. Plaintiff does not claim that the patent was worthless, but says the transaction would have been satisfactory had the goods been paid for. In an action by plaintiff to set aside the deeds and mortgage, *held* that he could not recover, because it appears (1) that D. was not a party to the fraud, and (2) that he purchased the property of C. relying upon plaintiff's declarations that she held the title thereto, whereby plaintiff was estopped from asserting title against D. or his mortgagee.

*Appeal from Tama Circuit Court.*—HON. C. HEDGES, Judge.

FILED, OCTOBER 19, 1888.

THIS is an action in equity by which the plaintiff seeks to set aside and vacate certain deeds, and a mortgage upon real estate, and to procure a decree quieting the title to the property in the plaintiff. There was a decree in the court below for the plaintiff, and the defendants appeal.

*W. H. Stivers*, for appellants.

*Struble & Stiger*, for appellee.

ROTHROCK, J.—The plaintiff was formerly the undisputed owner of the property in controversy. It

consisted of a lot upon which there is a store building in the village of Montour. About March 1, 1886, the defendant Jane Council, and one Tyner, made their appearance at Montour. Their business was to sell territorial rights to a patented washing-machine. It appears that the plaintiff had some previous knowledge of Tyner. He had been living near the village for some time. The plaintiff had a stock of merchandise in his store building, and Tyner and the woman Council commenced negotiations with plaintiff to exchange washing-machine territory for his property. The parties made an oral agreement, by which the woman, who was the owner of the patent-right, was to convey to plaintiff the right to fifteen counties in this state for the lot and building, and to take the stock of goods at their cost price, and pay cash therefor. The parties made an invoice of the goods for the purpose of ascertaining the amount of money to be paid. They were engaged upon the invoice for some three days. During this time Mrs. Council requested a conveyance of the real estate to her. The plaintiff objected to making the conveyance until he was paid for the goods. The woman insisted upon the conveyance, and on Saturday, March 6, 1886, the plaintiff made a deed of the property to the woman, and she made a deed of the patent-right to the plaintiff. On Monday following Mrs. Council conveyed the real estate to the defendant W. S. Doe, and two days thereafter Doe mortgaged the property to the defendant Taplin for six hundred dollars. The woman pretended that her money to pay for the goods was at Marshalltown, and the parties went there to close the transaction. But Mrs. Council paid no money, and she and Tyner left that part of the country. As the result of his dealings with the woman and Tyner, the plaintiff had conveyed his lot and store-building for the patent-right, and he did not succeed in making a sale of his goods.

He claims that he did not deliver the deed of the property to Mrs. Council, but that he deposited it with Tyner as an escrow, with the express agreement that it was not to be delivered to Mrs. Council until she had

paid the cash for the goods; and that the woman either
stole the deed from Tyner, or he wrongfully delivered it
to her. He also claims that he did not accept the
patent-right deed, but that the woman laid it down in
the store. In short, his claim is that the whole transac-
tion was a fraud and a conspiracy, concocted by the
woman and Tyner, and participated in by Doe and
others, to cheat him out of his property. This is denied
by the defendants Doe and Taplin, and the evidence
introduced on the trial was for the purpose of establish-
ing the proposition upon the part of the plaintiff, and
disproving it upon the part of the defendants. The
woman Council, and her assistant Tyner, conducted
their operations as is usually done in such cases. They
enlisted residents of the village as assistants, who
pretended to be greatly interested in the enterprise, and
to whom pretended sales of rights and machines were
made; and used all the usual appliances, which need
not be further referred to here. If the defendant Doe
was one of these assistants or "cappers," the convey-
ance to him should be set aside and cancelled, for such a
business is essentially fraudulent. We have given all
of the evidence most careful and thorough considera-
tion, and, without setting it out in detail, we will
merely state our conclusions, or the facts which we find
as established or not established by the evidence. The
plaintiff in his testimony as a witness does not claim
that the patent-right is worthless. He admits that, if
he had received the money for his stock of goods, the
transaction would have been satisfactory to him. It
would seem from this that his loss or damage consisted
in the failure of the woman to take his goods at cost
price, and pay him cash therefor. We have no doubt
he had the right to make the contract entire, and to
require the payment of the money for the goods before
conveying the property. But while it is true he testified
positively that he deposited the deed with Tyner as an
escrow, yet we think his testimony on that point is
overcome by the testimony of other witnesses of his
repeated declarations that he had delivered the deed,

conveyed the property, etc. Even if we should think that the preponderance of the evidence was with the plaintiff on this point, yet, in our opinion, it cannot affect the conveyance to Doe, for two reasons : *First*, it is shown by a preponderance of evidence that Doe had no connection with any of the fraudulent acts complained of ; and, *second*, the proven declarations of the plaintiff induced Doe to believe that the title was held by Mrs. Council, and Doe in good faith acted thereon. This would estop the plaintiff from asserting title as against Doe. *Haven v. Kramer*, 41 Iowa, 382. Considering all of the evidence, the impression left upon the mind is that the plaintiff has no just ground of complaint against Doe ; and, as Doe's title to the property is complete, no complaint can be made in respect to the mortgage held by Taplin. The appellee contends that the record made upon the appeal is defective, and that appellants are not entitled to a trial anew in this court. We do not think this claim is well founded. The certificate of the judge is in due form, and it clearly identifies the evidence which was offered and introduced upon the trial.

REVERSED.