HATTIE E. TUTT, Appellant, v. T. H. SMITH et al., Appellees.

**DEEDS:** Delivery—Presumption from Recording—Evidence to Overcome.
1 The recording of a real estate deed constitutes prima-facie proof that the grantor has made full delivery of the deed to grantee; but, on the issue that the grantee fraudulently obtained possession of the deed and recorded it, the grantor must, *against a subsequent good-faith purchaser for value from the grantee,* show (on the facts of the instant case) (1) that the deed was actually put in escrow by agreement of the parties, and later wrongfully delivered to the grantee without the direct or indirect fault of the grantor, and (2) that the wrongful delivery to the grantee was not the result of any act on the part of the grantor's own agents.

**QUIETING TITLE:** Possession—When Possession Not Notice of Adverse Claim.
2 The actual possession of real estate by the grantor in a duly recorded conveyance in fee during a reasonable time following the execution of such conveyance does not charge a good-faith subsequent purchaser for value of the land with notice that the one in possession continues to claim ownership of the land notwithstanding said conveyance.

**JUDGMENT:** Conclusiveness—Attempt by Party to Intervene—Effect.
3 A judgment quieting title in plaintiff on the ground that the defendant had fraudulently obtained the possession of a deed by plaintiff to defendant and had recorded the same, is not an adjudication of the right of a *subsequent purchaser* from said defendant because said purchaser attempted to intervene in said action, the record revealing the fact that the intervention was denied on grounds not going to the merits of said purchaser's rights.

**ESTOPPEL:** Equitable Estoppel—Inconsistent Attitude of Party.
4 A plaintiff who successfully prevents an attempted intervention on the grounds that the intervener's claim would not be prejudiced by the adjudication of the issues between the plaintiff and the defendant, may not thereafter claim that the adjudication so had *did* adjudicate the claim of the party attempting to intervene.

**JUDGMENT:** · Conclusiveness—Lack of Opportunity to Litigate Issue.

5   Absençe of legal opportunity for an investigation and determination of a claim is an all-sufficient reason why said claim has not been adjudicated.

**JUDGMENT:** Conclusiveness—Voluntary Withdrawal of Intervention.

6   The failure of a party who is attempting to intervene in an action to plead over, in accordance with an order of court, constitutes a withdrawal of the intervention, with the consequence that the party is not bound by the judgment rendered in the action.

Headnote 1: 18 C. J. pp. 419, 442. Headnote 2: 39 Cyc. pp. 1753, 1754. Headnote 3: 34 C. J. pp. 794, 1005. Headnote 4: 21 C. J. p. 1226. Headnote 5: 34 C. J. p. 775. Headnote 6: 34 C. J. p. 1005.

*Appeal from Lee District Court.*—H. F. WAGNER, Judge.

OCTOBER 17, 1924.

OPINION ON REHEARING JUNE 25, 1925.

REHEARING DENIED DECEMBER 17, 1925.

ACTION to quiet title to real property. The facts will be found stated in the opinion. From a decree for the defendants, the plaintiff appeals.—*Reversed.*

*Rendlen & White* and *E. W. McManus,* for appellant.

*Boyd & McKinley,* for appellees.

VERMILION, J.—Certain material facts are not in dispute. It thus appears that, prior to January 22, 1921, Mary E. Webb, who for convenience will alone be referred to as the appellee,

1. DEEDS: delivery: presumption from recording: evidence to overcome.

was the owner of the property in question, situated in the city of Keokuk. On that date she and her husband, Robert L. Webb, executed a warranty deed of the property to W. E. Herst. This deed was executed in pursuance of a contract whereby the Webbs were to exchange the Keokuk property for land in Missouri, and it was put in the hands of Cyrus Evans, to be given to one Pen Brace, to be by Brace delivered to Herst when the latter complied with the terms of the contract. The deed was

recorded in Lee County on February 16, 1921. The contract between the Webbs and Herst was never carried out by Herst; but how or when the deed came into the latter's possession and was recorded, is not shown by the record. On February 28, 1921, W. E. Herst and wife by warranty deed conveyed the Keokuk property to the appellant, Hattie E. Tutt, in consideration of the conveyance by her to Herst of a farm in Missouri. This deed was recorded March 14, 1921. In this transaction appellant was represented by one True, as her agent, and neither appellant nor True had any actual notice of the circumstances under which Herst had acquired his apparent title to the Keokuk property, or of any claim by Mary E. Webb, Herst's grantor, that Herst was not the owner of the property. The Webbs, however, were in the actual possession of the Keokuk property at all times. On March 17, 1921, appellee Mary E. Webb commenced an action against Herst, to set aside her deed to him and to quiet her title to the Keokuk property. The appellant, Hattie E. Tutt, intervened in that action, setting upon the conveyance from Herst to her, alleging that she had no knowledge or means of knowledge, nor any information to put her on inquiry, as to the matters set up in the petition, and claiming to be the owner of the property, and asking that her title be quieted. The plaintiff in that action moved to strike the petition of intervention, upon the ground, variously stated, that the rights of the intervener were not involved in, and would not be affected or prejudiced by, any adjudication between the plaintiff and defendant therein, and because the petition of intervention was filed too late, and was not properly verified. This motion was sustained generally. The intervener did not plead over, or appeal from the ruling. The cause proceeded to trial as between the plaintiff and defendant therein, resulting in a decree for the plaintiff, the appellee here, canceling and setting aside the deed from the Webbs to Herst, and quieting the title to the property in Mary E. Webb.

Three primary and determinative questions are presented by the appeal: (1) That there was no delivery of the deed from appellee to Herst, and hence no deed; and that Herst acquired no title thereunder, and none passed to appellant, even though she was a purchaser for value without notice of ap-

pellee's claim. (2) That, the appellee being in possession of the premises at the time appellant took the conveyance from Herst, appellant was affected with constructive notice of appellee's claim and title. (3) That appellant was bound by the adjudication between appellee and Herst.

I. There is involved in the delivery of a deed, not only the passing of the instrument, but the intent to make it effectual. *Hogueland v. Arts,* 113 Iowa 634. There is a presumption of delivery from the recording of the deed which can only be overcome by clear and satisfactory evidence. *Burch v. Nicholson,* 157 Iowa 502.

It must, of course, be conceded, and indeed has been so adjudicated in the former suit, that there was no delivery of the deed, as between appellee and Herst. But, without now considering the effect of that adjudication upon appellant, the fact that, as between appellee and Herst, there was no delivery, is not the end of the controversy as between appellee and the appellant, Herst's grantee, if she must be said to be a purchaser for value and without notice.

The doctrine is generally stated that, where an instrument held as an escrow is delivered by the depositary to the grantee without performance of the conditions upon which it was to be delivered, no title passes, and a subsequent purchaser from the grantee without notice and for a valuable consideration acquires no title, and will not be protected. *Haven v. Kramer,* 41 Iowa 382; 21 Corpus Juris 885. The rule has been strictly applied where the deed was surreptitiously and fraudulently obtained by the grantee from the depositary without his consent; and it has been said that a deed so obtained will no more pass title to the grantee than if it were a forgery, and will not transfer title to a subsequent purchaser without notice. *Jackson v. Lynn,* 94 Iowa 151.

This court has, however, long recognized the rule that, where a deed is placed in the hands of the agent of the grantor, to be delivered only on the performance by the grantee of some condition, or to be deposited with another as an escrow, to be so delivered, and through the fraud of such agent the deed is delivered to the grantee, a purchaser for value and without notice from the grantee will be protected, upon the familiar

doctrine that, as between two parties both of whom have been wronged, the one least at fault will be protected. And this is true although, as between the original grantor and grantee, there was no delivery. In *Creveling v. Banta,* 138 Iowa 47, we said:

"There must be a delivery, to become effective as between the parties to the instrument, and this does not happen when such is not the intention of either party. Plainly enough, when Banta received these deeds with the agreement to deposit them with the bank in escrow, and they were left with him for that purpose, there was no intention that this should constitute a delivery to him. The rather must he be held to have taken them as agent, and his breach of trust in their retention cannot alone be held to confer on him the rights of grantee. As between Banta and the Crevelings, we have no trouble in determining that there was neither a delivery of the deeds in blank nor express authority to fill in the blanks. But the authority to do so upon the delivery of the conveyances in Kansas is clearly to be implied. They were to remain in escrow until the happening of that event, and then, though not so said in as many words, to be turned over to Banta, as is manifest from the circumstances of the transaction. In other words, the grantors placed these instruments in Banta's possession, and thereby armed him with the means of deceiving those with whom he might deal in reliance on his apparent ownership of the land. As against innocent purchasers for value, Creveling cannot be heard to complain of the conditions under which he acquired the deed; for, as between two parties both of whom have been wronged, the one least at fault will be protected. On this ground, and to guard titles, parol evidence is not admissible against third persons dealing with the land for value and without notice, to prove conditions on which the intended grantee acquired possession of the deed."

See, also, *Owen v. Perry,* 25 Iowa 412; *Clark v. Allen,* 34 Iowa 190; *Haven v. Kramer,* supra; *Swartz v. Ballou,* 47 Iowa 188; *McCleery v. Wakefield,* 76 Iowa 529; *Way v. Council,* 76 Iowa 741.

It is not shown that there was any agreement between appellee and Herst, or Evans, the latter's agent in making the

trade, that the deed was to be deposited as an escrow. A deposit by one party alone, without the agreement of all parties to the instrument, will not constitute the instrument an escrow. *Taylor County v. King,* 73 Iowa 153; 21 Corpus Juris 870. The only testimony on the subject comes from the husband of appellee, who appears to have been acting for her, and from Evans, who was acting for Herst. Webb testified that he gave the deed to Evans "to take down there and put up until they could comply with their part of the contract and furnish a deed for the land they were going to deed me. Evans took the deed from me with that understanding. * * * I gave the deed to Evans to take down to Pen Brace to hold until the deeds were made."

Evans testified:

"Mr. Webb gave it [the deed] to me, and asked me to deliver it to Brace."

So far as appears from this record, Evans was but the agent of appellee, to deliver the deed to Brace; and the latter, if he ever received the deed, was but the agent of appellee, to hold the deed until Herst had complied with his contract, and then to deliver to him. The contract between appellee and Herst is not in evidence. A written instruction to Brace, signed by Robert L. Webb only, and dated February 14, 1921, confirms this view. Brace is thereby instructed not to deliver the deed until authorized so to do by Webb or his attorney, or until he received for delivery to Webb the conveyance of the farm, and until the other provisions of the contract were complied with.

The burden was upon appellee to overcome the presumption arising from the recording of the deed, that it was delivered. To bring herself within the rule heretofore recognized by this court in *Jackson v. Lynn,* supra, that a deed deposited as an escrow and fraudulently obtained from the depositary without his consent is void, and passes no title either to the grantee or to a subsequent innocent purchaser, and to enable her to escape the application of the doctrine laid down in *Creveling v. Banta,* supra, and the other cases cited, that, where two parties are wronged, a subsequent innocent purchaser for value is to be protected over a grantee whose act made possible the perpetration of the fraud, it was incumbent on appellee to establish that

the deed was, by agreement of the parties, to be deposited with Brace as an escrow, and that it was so deposited, and that it was not through the fraud of one who was her agent only that it was delivered to the grantee and recorded. The record is barren of such proof.

The record does not clearly disclose whether the deed in fact reached the hands of Brace or not. Brace was not a witness on the trial, and Evans did not testify on the point. The only testimony on the subject is that of Webb. He testified:

"I suppose he gave it to Pen Brace. He said it was there."

Nor does it appear how the deed came to be recorded, or who was at fault in causing it to be recorded, in violation of appellee's instructions.

The appellee received nothing for the property, and it is clear that she was the victim of a gross fraud. Herst, so far as the record reveals, was the beneficiary of the fraud, and his participation in it is, if not shown, certainly to be inferred. He is shown to be insolvent. That appellee or appellant must suffer a substantial loss, is apparent. We are constrained to· say that, unless appellant is chargeable with constructive notice of appellee's claim, or is bound by the adjudication in the suit between appellee and Herst, she is entitled, as a subsequent purchaser for value and without notice, to protection as against appellee, who, by putting the deed in the hands of Evans or Brace, rendered possible the perpetration of the fraud.

II. The appellant purchased for a valuable consideration, and took conveyance of the property from the holder of the record title without actual notice of any claim on the part of appellee. The appellee was in actual possession of the property, and was the grantor in the deed to appellant's grantor. It is well settled that the continued possession of a grantor who has sold and conveyed the property, for a not unreasonable time after such conveyance, imparts no constructive notice of any claim of right on his part adverse to the title so conveyed; but that his possession under such circumstances is presumed to be a mere holding over as the tenant at will of his grantee. *Koon v. Tramel,* 71 Iowa 132; *Sprague v. White,* 73 Iowa 670; *May*

2. QUIETING TITLE: possession: when possession not notice of adverse claim.

*v. Sturdivant*, 75 Iowa 116; *Dodge v. Davis*, 85 Iowa 77; *Crooks v. Jenkins*, 124 Iowa 317; *Trulin v. Plested*, 178 Iowa 220.

This proposition is met by appellee by the contention that there was no delivery of the deed to Herst, and that, there being no delivery, there was no deed. In view of what has been said on this subject in the foregoing division of the opinion, the question is not, on the facts presented by the record, to be so summarily disposed of. The fact that the deed was fraudulently procured and recorded does not take the case out of the operation of the rule stated. We have held that the grantor's continued possession of the premises imparted no constructive notice of a claim on his part that his conveyance was procured by the fraud of his grantee. *Trulin v. Plested*, supra. In *Handelman v. Mandel*, 70 Colo. 136 (197 Pac. 1021), where deeds in blank had been delivered to the agent of the grantor, and the agent, without authority, inserted his own name and conveyed the property to purchasers for value without actual notice, it was held that the grantor's continued possession of the premises imparted no notice to such purchasers of an adverse claim on the part of the grantor. It was said:

"The rule that possession is constructive notice was established to protect the owner against others. It cannot be invoked against his own deed."

The conveyance to appellant was made a little over a month from the date of the deed to Herst, and less than two weeks after the date of its recording. We are of the opinion that appellee's possession for so short a time after the execution and recording of her deed purporting to convey the property to appellant's grantor, did not impart constructive notice of a claim by appellee in contradiction of her deed so appearing of record.

III. It is contended that appellant is bound by the adjudication in the action brought by appellee against Herst. We think the contention is without merit. Passing, for the moment, the question of her intervention in the action, appellant was not in privity with Herst. She acquired her right before the commencement of that action. *Steel v. Long*, 104 Iowa 39; *Gerber Co. v. Thompson*, 84 W. Va. 721 (100 S. E.

3. JUDGMENT: conclusiveness: attempt by party to intervene: effect.

733, 7 A. L. R. 730). Appellant was, of course, interested in the result of the suit, since the success of Herst would have disposed of any claim by appellee to the property; but, aside from her intervention, she took no part in the conduct of the case, and did not manage or control the litigation. *Coleman v. Bosworth,* 180 Iowa 975.

Appellant's claim to the property was not at all in issue, as between appellee and Herst, and was not determined, unless by the ruling on the motion to strike her petition of interven- tion. The motion to strike was based upon numerous grounds, none of which went to the merits of appellant's claim. It was said in the motion that the petition of intervention was filed too late, being just before the trial, and would delay the trial; that it was not properly verified; that the intervention was not authorized by statute; that the determination of the issue be- tween the plaintiff and defendant would not in any way affect the rights of the intervener; and that she would neither gain nor lose her rights by such determination; that the petition of intervention did not show that intervener had any rights that would be prejudiced by any adjudication between plaintiff and defendant. So far as the motion presented technical or formal defects in the petition as a ground for striking it, there was no adjudication on the merits of appellant's claim. 34 Corpus Juris 794.

In other respects, the motion presented only the question that her rights could not be affected by the determination of the issues between the plaintiff and the defendant therein. It would seem too plain to require argument or the citation of authority to sustain the proposi- tion, that appellee, having procured the striking of the petition of intervention on the ground that the claim there asserted would not be prejudiced by the adjudication of the issues between the plaintiff and defendant therein, is now estopped to insist upon the decree in that action as an adjudica- tion of the same claim when set up in another action.

4. ESTOPPEL: equi- table estoppel: inconsistent at- titude of party.

But, in a larger view of the matter, the decree against Herst was no bar to appellant's claim. It is well settled that a former judgment will not operate as a bar "unless the proceed-

ings leading up to such judgment 'involved or afforded full legal opportunity for an investigation and determination of the merits of the suit.' " *McCullough v. Connelly*, 137 Iowa 682,

**5. JUDGMENT: conclusiveness: lack of opportunity to litigate issue.**

and authorities there cited. Aside from the fact that it is perfectly apparent that the proceedings in the former suit expressly denied to appellant an opportunity for any investigation of her claim, the decree in the former suit did not purport to adjudicate any matter set up in the petition of intervention. As said in the *McCullough* case, supra, of an intervener who, it was claimed, was bound by a judgment against the defendant, intervener's grantor:

"Nothing short of a decree in which the merits of her petition were considered and concluded could bind her. Until the entry of such decree, it was her right to abandon her claim and withdraw from the action; and, should she elect to do this, any decree entered in favor of plaintiff against defendant would not be conclusive on her."

As has been said, the motion to strike the petition of intervention was sustained generally. If the ruling be considered as put upon any of the grounds that denied appellant's right to intervene at all (none of which went to the merits of her claim), she was no longer a party; if put upon a ground that might have permitted her to plead over, her failure to do so

**6. JUDGMENT: conclusiveness: voluntary withdrawal of intervention.**

was a withdrawal from the case. In either view, she was no longer a party to the action, and was not bound by the judgment against Herst. *Wilson v. Trowbridge*, 71 Iowa 345; 34 Corpus Juris 1005.

Boyd & McKinley held a mortgage on the premises, given by the appellee Mary E. Webb and her husband long after the recording of appellant's deed. They acquired no right thereunder, as against appellant.

We reach the conclusion that appellant was entitled to a decree as prayed, and the cause is—*Reversed.*

· All the justices concur.